**Slip Op. No. 13-53**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**Before: Nicholas Tsoucalas, Senior Judge**

_____
|  |  |
|---|---|
| TIANJIN MAGNESIUM INTERNATIONAL CO., LTD., | : |
|  | : |
|     Plaintiff, | : |
|  | : |
|     v. | :   Consol. Court No.: 11-00006 |
|  | : |
| UNITED STATES, | : |
|  | : |
|     Defendant, | : |
|  | : |
|     and | : |
|  | : |
| US MAGNESIUM LLC, | : |
|  | : |
|     Defendant-Intervenor. | : |
_____

**MEMORANDUM ORDER**

**Held**: Defendant United States is awarded $8,302.20 in combined fees and costs, and defendant-intervenor US Magnesium LLC is awarded $34,042.72 in combined fees and costs.

Dated: April 23, 2013

    Riggle & Craven, (David A. Riggle) for Tianjin Magnesium International Co., Ltd., Plaintiff.

    Stuart F. Delery, Acting Assistant Attorney General; Jeanne E. Davidson, Director, Claudia Burke, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Renee Gerber and Alexander v. Sverdlov); Office of Chief Counsel for Import Administration, United States Department of Commerce, Melissa Brewer, Of Counsel, for the United States, Defendant.

    King & Spalding, LLP, (Stephen A. Jones, Jeffrey B. Denning, and Taryn K. Williams) for US Magnesium LLC, Defendant-Intervenor.

    **TSOUCALAS, Senior Judge:** Before the court are defendant United States Department of Commerce's ("Commerce") and defendant-

intervenor US Magnesium LLC's ("USM") bills of costs, and plaintiff Tianjin Magnesium International Co., Ltd.'s ("TMI") response thereto.  By orders dated November 21, 2012 and December 21, 2012, the court awarded fees and costs <u>sua sponte</u> in favor of Commerce and USM on the basis of TMI's frivolous argumentation and repeated misrepresentations to the court.  <u>Tianjin Magnesium Int'l Co. v. United States</u>, 36 CIT __, __, 883 F. Supp. 2d 1330, 1332 (2012) ("<u>Tianjin III</u>").  As explained below, the court hereby limits USM's requested fees and costs to those charged between October 1, 2011 and May 16, 2012, reduces fees and costs associated with the oral argument by 60%, and adjusts downward all fees awarded to reflect average rates for attorneys in the Washington, D.C. area.  The court awards Commerce all of its requested fees and costs.

**BACKGROUND**

With gall typical of its submissions in this action, TMI mischaracterizes the court's previous order early in its response: "The court mentions 'intentionally fraudulent conduct' in another action, but states that '[it] is not aware of any identical misconduct during this appeal.'"  TMI's Resp. at 3 n.2 (quoting <u>Tianjin Magnesium Int'l Co. v. United States</u>, 36 CIT __, __, 878 F. Supp. 2d 1351, 1352 (2012) ("<u>Tianjin II</u>")).  TMI uses this quote to imply that the court did not identify any misconduct whatsoever.  To the contrary, as it stated in the very same sentence, the court found "it troubling that TMI employed <u>other tactics designed to</u>

mislead the court and the other parties to this action." <u>Tianjin II</u>, 36 CIT at __, 878 F. Supp. 2d at 1352 (emphasis added). The docket is in fact replete with instances of TMI's misconduct:

- TMI frivolously attempted to amend its complaint to include a challenge to Commerce's use of "zeroing" despite its failure to exhaust administrative remedies. Specifically, TMI claimed that the holding in <u>Dongbu Steel Co. v. United States</u>, 635 F.3d 1363 (Fed. Cir. 2011) overruled precedent that prevented TMI from objecting to zeroing below, thus triggering the "legal question" and "futility" exceptions. TMI's Mot. Amend Compl. at 1-2, 14-15. In reality, nothing prevented TMI from objecting to Commerce's use of zeroing below and there was no factual basis to support the futility and legal question exceptions.

- In its motion for judgment on the agency record, TMI argued that Commerce erred in calculating the surrogate financial ratio without being candid about its own failure to exhaust the claim below. See Pl.'s Mot. J. Agency R. at 13-24 ("Pl.'s MJAR"); <u>Tianjin II</u>, 36 CIT at __, 878 F. Supp. 2d at 1352. Furthermore, despite complete and "accurate refutations from both Commerce and [USM]" in response, TMI continued the argument in its reply brief without once acknowledging the exhaustion issue. <u>Tianjin II</u>, 36 CIT at __, 878 F. Supp. 2d at 1352.

- TMI submitted supporting documents during the underlying review knowing that they had been falsified so as to obtain a lower dumping margin. <u>Tianjin Magnesium Int'l Co. v. United States</u>, 36 CIT __, __, 844 F. Supp. 2d 1342, 1344-48 (2012) ("<u>Tianjin I</u>"). Nevertheless, in its response to USM's motion for judgment on the agency record, TMI insisted that it "cooperated fully in the review by submitting responses to all questions . . . and being subject to a lengthy verification," and that "[t]here is no information of record showing that the primary information relied on in calculating a margin was misleading or unverifiable in the review." Pl.'s Resp. USM's Mot. J. Agency R. at 2-6. TMI's argument significantly misrepresents undisputed portions of the

>    record.[1]  See Tianjin I, 844 F. Supp. 2d at 1347–48.
>
> - TMI requested an extension to respond to the remand results, but it did not file any comments within that time frame.  After the court issued an order accepting the remand results, TMI filed a motion for reconsideration in which it argued, incredibly, that it did not have an opportunity to respond. Tianjin III, 36 CIT at __, 883 F. Supp. 2d at 1331–32.

These are but the latest examples of TMI and its counsel's obstructive behavior in trade proceedings.  See Tianjin Magnesium Int'l Co. v. United States, 35 CIT __, __, Slip Op. 11-17 at 10–11 (Feb. 11, 2011) (not published in the Federal Supplement) (noting TMI's complete failure to address an "obvious problem" with its argument despite accurate refutation from USM and Commerce); Tianjin Magnesium Int'l Co. v. United States, 35 CIT __, __, Slip Op. 11-100 at 2–6 (Aug. 10, 2011) (not published in the Federal Supplement) (describing TMI's submission of voluminous falsified records and other intentional misrepresentations before Commerce); Tianjin I, 36 CIT at __, 844 F. Supp. 2d at 1344–48 (describing TMI's submission of some of the same falsified records as those described in Slip Op. 11-100 during the proceedings that led to the present appeal).

In its bill of costs, Commerce itemizes the time it "devoted to responding to [TMI]'s argument," which it estimates to be "40

---

[1] As TMI argues, its response does parallel Commerce's position on the adverse facts issue. Unlike TMI, however, Commerce did not misrepresent the record by arguing that it was devoid of relevant fraudulent or unverifiable filings. See Commerce's Resp. Pl.'s & USM's Mots. J. Agency R. at 8–9, 25–31.

**Court No. 11-00006**                                                                    **Page 5**

percent of the fees and costs associated with [its response] brief and related oral argument." Gerber Aff. at 1–2. Commerce also seeks full reimbursement for fees associated with TMI's motion to file an amended complaint. Id. at 2. Commerce calculates its requested fees based on its counsel's placement in the "Laffey Matrix," id. at 2–3, which "is a chart of hourly rates for attorneys and paralegals in the Washington, D.C. area that was prepared by the United States Attorney's Office for the District of Columbia to be used in fee-shifting cases." Pickett v. Sheridan Health Care Ctr., 664 F.3d 632, 649 (7th Cir. 2011). Accordingly, Commerce requests an award of $8,120.00 in fees and $182.20 in costs. Gerber Aff. at 1–3.

USM, on the other hand, bases its request on the amounts its attorneys and support staff actually billed. Jones Aff. at 3. These fees range from $150 per hour for a paralegal's work to $645 per hour for a partner's legal work. USM also requests consulting fees and costs, including those billed by a firm called Economic Consulting Services. Id. at 2. USM asserts that all fees and costs listed reflect, "[t]o the extent possible, . . . [those] incurred addressing legal issues raised by TMI's" misconduct, excluding "costs and fees incurred in connection with [USM's] surrogate financial ratio issue[,] . . . [and] TMI's attempt to amend its complaint." Id. at 3–4. USM thus requests $216,020.50 in combined attorney, consultant, and paralegal fees, and $1,551.93

in costs.

In response, TMI contends that the court lacks the authority to tax fees and costs and that USM and Commerce fail to provide "some linking to an action of TMI that justifies" the awards. TMI's Resp. at 7. Specifically, TMI argues that it should not be responsible for fees and costs associated with: (1) issues TMI raised in its own complaint, since the court declined to adjudicate those claims; (2) the proceedings on remand, because TMI "did not then obstruct or delay the remand finding in any way;" (3) the oral argument, because TMI did not request the hearing; and (4) claims USM asserted independently in member case 1:11-cv-00014. Id. at 4-7. Outside of its general request that the court decline to award all requested fees and costs, TMI does not provide any calculations to aid the court in adjusting the awards. See id. at 1-8.

## ANALYSIS

As a preliminary matter, "an assessment of attorney's fees is undoubtedly within a court's inherent power." Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991) (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 765 (1980)). Contrary to TMI's suggestions otherwise, see TMI's Resp. at 4, such authority exists despite separate mechanisms for imposing sanctions contained in the United States Code and the Federal Rules of Civil Procedure. Chambers, 501 U.S. at 45-46. "[A] court may assess attorney's fees when a

party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Id. at 45 (quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, at 257-58 (1975)); see also TMI's Resp. at 4 (selectively quoting Alyeska to imply that the American Rule always prohibits assessment of attorney's fees under the court's inherent power). The court also retains the discretion to award costs in appropriate situations. See Former Emps. of Bass Enters. Prod. Co. v. United States, 13 CIT 372, 374 (1989) (not reported in the Federal Supplement).

TMI's repeated efforts — through counsel — to obstruct Commerce's exercise of its statutory duties, to delay proceedings through frivolous argumentation and filings, and to mislead the court on material matters of fact and law constitute an intolerable level of vexatiousness and bad faith. See Chambers, 501 U.S. at 45-56. Given TMI's persistent misconduct before this Court and before Commerce, an award of fees and costs related to its problematic filings in this case is warranted and necessary to deter additional costly distractions in future trade proceedings. See id.

Turning to the substance of TMI's response, TMI first argues that it should not be responsible for fees related to the issues TMI raised in its complaint because "the court has not ruled on th[ose] issues." TMI's Resp. at 4-6. TMI's argument is unpersuasive. USM and Commerce both spent considerable time and

resources attempting to respond to TMI's frivolous and bad faith arguments regarding its surrogate financial ratio claim. See Commerce's Resp. Pl.'s MJAR at 17–19; USM's Resp. Pl.'s MJAR at 5–11. Those costs did not disappear when the court deferred judgment on the financial ratio issue in the interest of judicial economy.[2] Therefore, there is no reason to subtract these fees and costs from the requested awards.

Second, TMI argues that it should not be taxed the fees and costs USM incurred on remand because TMI "did not . . . obstruct or delay the remand finding in any way." TMI's Resp. at 5. The court agrees that fees and costs on remand are not within the ambit of the previous orders. Even though USM may have spent resources during the remand proceedings addressing TMI's vexatious and bad faith conduct, the court's intention is to capture only those fees and costs resulting from the misconduct TMI committed before it. See Chambers, 501 U.S. at 44–45. The same reasoning applies to USM's post-remand fees — as TMI did not file objections until after USM drafted and filed its remand comments, USM's post-remand fees cannot be considered a direct result of TMI's misconduct before

---

[2] In fact, the court deferred judgment on the claim because TMI's previous fraudulent conduct before Commerce required the court to remand with instructions to consider the application of full adverse facts available against TMI. Tianjin I, 844 F. Supp. 2d at 1346–48. Granting TMI's objection would have the perverse effect of rewarding its behavior below with license to burden the parties and the court with frivolous arguments on appeal so long as those arguments become moot after remand. See id. at 1347–48.

this court. Therefore, USM's award should be limited to those fees and costs incurred before May 16, 2012.

Third, TMI requests that the court subtract the fees and costs USM and Commerce incurred in connection with the oral argument because "TMI was not the party requesting [the] hearing." TMI's Resp. at 7. The court agrees that USM and Commerce did not incur fees and costs related to the oral argument solely because of TMI's misconduct. However, despite the fact that TMI did not request the hearing, both USM and Commerce did incur preparation and attendance costs to address <u>TMI's own frivolous arguments</u> as presented in its motion for judgment on the agency record and its response to USM's motion. Therefore, it is appropriate to assess some portion of the fees and costs USM and Commerce incurred in January and February 2012 to prepare for and to attend the oral argument.

Commerce applies a 60% pro rata reduction to its fees and costs related to the oral argument to reflect the portion of time it estimates that it spent addressing TMI's submissions. Gerber Aff. at 1–3. TMI does not specifically object to this apportionment, and the court sees no reason to alter it. USM, on the other hand, does not limit its oral argument fees and costs in a manner that identifies TMI's problematic motion and response. Therefore, in the interest of acting "with restraint and discretion," <u>Chambers</u>, 501 U.S. at 44–45, the court will reduce USM's requested oral argument fees and costs by 60% to connect the

award more directly with TMI's actions.

Fourth, TMI argues that the court should not award fees and costs USM incurred in asserting its own adverse facts available claim because "[f]or that issue[,] TMI was . . . standing with [Commerce] in support of its final results," meaning that they "are not traceable to TMI['s]" misconduct.  TMI's Resp. at 5.  To a limited extent, this argument is also persuasive.  This action is a consolidation of Court Nos. 11-00006, filed by TMI, and 11-00014, filed by USM.  Had 11-00006 and 11-00014 remained separate, USM could have filed substantially the same motion for judgment on the agency record as it did in this consolidated action.  See generally USM's Mot. J. Agency R. (not addressing issues raised exclusively in TMI's submissions to the court).  Even though USM incurred these costs as a direct result of TMI's fraudulent conduct before Commerce, it did not expend additional resources drafting this motion as a result of TMI's conduct on appeal.  Nevertheless, TMI tainted USM's adverse facts claim as soon as it filed its response to USM's motion for judgment on the agency record, in which TMI repeatedly misrepresented the facts and controlling law.  The fees and costs USM incurred drafting its reply brief therefore are connected to TMI's misconduct before this court.  Accordingly, the court will subtract the fees and costs USM incurred up to and including the filing and service of its own motion for judgment on the agency record, namely, those accruing before October 1, 2011.

Lastly, although TMI does not object to the fee rates Commerce and USM applied in their bills of costs, the court declines to award fees based on the rates counsel for USM actually billed. See Mark Indus., Ltd v. Sea Captain's Choice, Inc., 50 F.3d 730, 733 (9th Cir. 1995) ("[T]he amount of an inherent powers sanction is meant to do something very different than provide a substantive remedy to an aggrieved party. An inherent powers sanction is meant to 'vindicat[e] judicial authority.'" (quoting Chambers, 501 U.S. at 55)). Other courts have determined the Laffey Matrix to be a reasonable manner of assessing attorneys' fees for complex federal litigation in the Washington, D.C. area. E.g., Young v. Dist. of Columbia, 893 F. Supp. 2d 125, 130–32 (D.D.C. 2012); Jefferson v. Milvets Sys. Tech., Inc., 986 F. supp. 6, 10–11 (D.D.C. 1997). Thus, consistent with its purpose in assessing fees against TMI, the court will apply Laffey Matrix rates to USM's requested hours so as to most reasonably value the time USM spent addressing TMI's vexatious and bad faith conduct before this court.

Again in the interest of "restraint and discretion," Chambers, 501 U.S. at 44–45, the court will assign each timekeeper to the rate category with the lowest possible experience level commensurate with that timekeeper's title. In other words, the court will assess associate and "counsel" fees under the 1–3 years' experience row, and partner fees under the 8–10 years' experience row. Furthermore, the court will assess all consultant and project

**Court No. 11-00006** **Page 12**

assistant fees at the paralegal experience row. See Gerber Aff. at 5. Adjusting costs in this manner adequately ties the sanction to TMI's conduct without upsetting the purpose of the court's prior orders.

**CONCLUSION**

The court is legally and factually justified in taxing TMI with fees and costs as a deterrent against future vexatious and bad faith conduct in trade proceedings. The court will award Commerce's requested fees and costs in full because they are both reasonable and related to TMI's misconduct in this action. Based on TMI's objections and the court's duty to exercise restraint and discretion, however, the court will adjust USM's requested award as follows: (1) subtract fees and costs incurred before October 1, 2011; (2) subtract fees and costs incurred after May 16, 2012; (3) reduce fees and costs incurred in January and February 2012 by 60%; and (4) to the extent practicable, reduce USM's fee rates to those listed on the Laffey Matrix. Therefore, as detailed in the tables below, the court holds TMI and its counsel jointly and severally liable to Commerce for $8,302.20 in combined fees and costs, and jointly and severally liable to USM for $34,042.72 in combined fees and costs.

**Court No. 11-00006**                                                           **Page 13**

## USM Fees Table

| Timekeeper | Title | Hours | <u>Laffey</u> Rate | 60% Pro Rata Reduction (for hours logged between Jan. and Feb. 2012) | Amount (hours times rate minus pro rata reduction) |
|---|---|---|---|---|---|
| Denning | Counsel | 139.3 | $240.00 | 75.7 hours (-$10,900.80) | $22,531.20 |
| Doyle | Associate | 0.3 | $240.00 | 0.3 hours (-$43.20) | $28.80 |
| Enck | Paralegal | 0.7 | $140.00 | n/a | $98.00 |
| Jones | Partner | 1.5 | $350.00 | n/a | $525.00 |
| Lutz | Consultant | 22.5 | $140.00 | n/a | $3,150.00 |
| McGregor | Consultant | 0.25 | $140.00 | n/a (time logged in Feb. 2012 unrelated to oral argument) | $35.00 |
| Nelson | Paralegal | 17.0 | $140.00 | 0.8 hours (-$67.20) | $2,312.80 |
| Snead | Associate | 22.5 | $240.00 | 10.9 hours (-$1,569.60) | $3,830.40 |
| Telep | Partner | 0.3 | $350.00 | n/a | $105.00 |
| Williams | Associate | 6.3 | $240.00 | 5.2 hours (-$748.80) | $763.20 |
| | | | | Total: | $33,379.40 |

## USM Costs Table

| Bill Source | Dates Incurred | Amount | 60% Pro Rata Reduction (for costs incurred between Jan. and Feb. 2012) | Total |
|---|---|---|---|---|
| King & Spalding | Nov. 2011 | $43.99 | n/a | $43.99 |
| King & Spalding | Dec. 2011 | $59.50 | n/a | $59.50 |
| King & Spalding | Feb. 2012 | $720.53 | (-$432.32) | $288.21 |
| Economic Consulting Services | Feb. 2012 | $679.04 | (-$407.42) | $271.62 |
| | | | Total: | $663.32 |

## Total Amounts Due

| Recipient | Fees Due | Costs Due | Total Due |
|---|---|---|---|
| Commerce | $8,120.00 | $182.20 | **$8,302.20** |
| USM | $33,379.40 | $663.32 | **$34,042.72** |

**Court No. 11-00006**                                                                                        **Page 14**

**ORDER**

In accordance with the foregoing, it is hereby

**ORDERED** that defendant United States is awarded a combined $8,302.20 in fees and costs; and

**ORDERED** that defendant-intervenor US Magnesium LLC is awarded a combined $34,042.72 in fees and costs; and

**ORDERED** that plaintiff Tianjin Magnesium International Co., Ltd. and plaintiff's counsel, the law firm of Riggle and Craven, shall be jointly and severally liable to pay both awards in full within sixty (60) days of the filing of this order.

                                              /s/NICHOLAS TSOUCALAS
                                              **Nicholas Tsoucalas**
                                              **Senior Judge**

**Dated: April 23, 2013**
       **New York, New York**